Nicholas A. Bender, #027271
**BENDER DAY CULLIMORE**
12339 South 800 East, Suite 101
Draper, UT 84111
T: (801) 542-8746
F: (801) 992-2241
nick@benderdaycullimore.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| TAC Holdings, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>The Atlatl Group, LLC, an Arizona limited liability company doing business as Bravada Yachts; Bravada Yachts LLC, an Arizona limited liability company; Aaron Browning, an Arizona citizen; Zachary Taylor, an Arizona citizen; Cindy Johnson, an Arizona citizen; Robert Gutierrez, an Arizona citizen; Sabbatical Yachts LLC, an Arizona limited liability company; and Does 1 through 10,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>** JURY DEMAND ** |

COMES NOW Plaintiff TAC Holdings, LLC ("TAC"), by and through undersigned counsel, the law firm of Bender Day Cullimore, to allege and complain of Defendants The Atlatl Group, LLC, doing business as Bravada Yachts ("Atlatl Group"), Bravada Yachts

- 1 -

LLC ("Bravada LLC"), Aaron Browning ("Browning"), Zachary Taylor ("Taylor"), Cindy Johnson ("Johnson"), Robert Gutierrez ("Gutierrez"), and Sabbatical Yachts LLC ("Sabbatical Yachts") as follows:

**PARTIES**

1. TAC is a Utah limited liability company.

2. Darren Coughlin ("Darren"), who owns TAC, is a Utah citizen.

3. Atlatl Group, Bravada LLC, and Sabbatical Yachts are all limited liability companies formed under the laws of the State of Arizona.

4. Browning, Gutierrez, and Sabbatical Yachts are the only three members of Atlatl Group and Bravada LLC.

5. TAC is informed and believes that the natural persons who are the ultimate beneficial owners of Sabbatical Yachts are citizens of Arizona.

6. Johnson and Taylor are employees of one or more Defendants.

7. Browning, Gutierrez, Johnson, and Taylor are citizens of Arizona.

8. Does 1 through 10 are persons natural and unnatural who are believed to have participated in the fraud of the other Defendants as alleged herein, and/or to have received amounts TAC paid to "Bravada Yachts," as alleged herein.

**JURISDICTION AND VENUE**

9. Because TAC is a citizen of the State of Utah and Defendants are all citizens of the State of Arizona, and because the amount in controversy exceeds the sum of $75,000, this Court has jurisdiction under Title 28, Section 1332(a) of the United State Code.

10. Because all Defendants are or, at all times relevant to the claims herein were, citizens of the State of Arizona, and because the injuries complained of herein arose out of Defendants' contacts with the State of Arizona, this Court has and may exercise personal jurisdiction over Defendants consistent with due process.

11. Because all Defendants reside in the State of Arizona, and because all events complained of herein took place in the State of Arizona, venue is proper in this Court under Title 28, Sections 1391(b)(1) and (2) of the United States Code.

## GENERAL ALLEGATIONS

12. At all times relevant hereto, TAC acted through agents Darren and Darren's wife, Tara Coughlin ("Tara").

13. Darren and his family have a long tradition of houseboating, particularly on the waters of Lake Powell.

14. In the spring of 2020, Darren began looking for a houseboat to accommodate Darren's growing family.

15. Through that search, Darren encountered an ad "Bravada Yachts" published on KSL.com that advertised for sale a fractional interest in 2021 Bravada Yachts GT-2285 houseboat (the "Houseboat").

16. Darren responded to that advertisement, and between June 17, 2020 and June 30, 2020, had numerous conversations with Browning and Taylor.

17. In those conversations, both Browning and Taylor explained that "Bravada Yachts" would build the Houseboat, which would then be owned by an Arizona company called GT2275 Yacht LLC ("GT2275").

18. Browning and Taylor further explained that TAC would own part of GT2275 and have the ability to use the Houseboat during certain weeks of the year, and represented that amounts TAC paid would be used for construction of the Houseboat.

19. Relying on those representations, TAC entered into that certain Membership Unit Purchase Agreement, dated as of June 30, 2020 (the "Purchase Agreement"), on June 22, 2020, and paid $163,145.60 to "Bravada Yachts" as a deposit on the Houseboat.

20. While Browning purported to execute the Purchase Agreement on behalf of GT2275, GT2275 was not formed with the State of Arizona until July 22, 2020—a month *after* the Purchase Agreement was signed.

21. Although the Purchase Agreement purported to sell to TAC one-sixth of the total equity of GT2275, Defendants intentionally kept Darren from learning the identities of other owners.

22. On September 4, 2020, Darren e-mailed Taylor and asked about progress on the Houseboat, which Defendants called "the Freer," and Taylor told Darren that "Invictus" was currently being built, but the Freer was next in line, and the moment Invictus was out of the way, construction of the Freer would begin and move at full speed.

23. In that same exchange, Taylor said the Houseboat would still be ready to set sail in the summer of 2021, but that Browning could give more input.

24. Darren then began to speak with Browning more regularly.

25. In an e-mail on October 6, 2020, Taylor informed Darren that "Invictus" was out of the way and Defendants had begun construction on the Freer.

26. Yet on May 28, 2021, Browning e-mailed Darren and others, "congratulated" them on being owners of "the boat currently referred to as 'Freer,'" and informed them that "construction has officially begun."

27. This was the first time that Darren learned the identities of those who at least appeared to be the other owners of GT2275.

28. Moreover, despite the fact that TAC signed the Purchase Agreement on June 22, 2020, Browning claimed in this e-mail on May 28, 2021, nearly a year later, that those copied on his e-mail had only then become "partners."

29. On June 15, 2021, Browning held a "naming of the boat" meeting, in which the apparent owners of GT2275 submitted their proposed names to Browning.

30. Through that process, Browning represented to Darren and the other apparent owners that the name "Diversion" had been chosen.

31. On August 16, 2021, Tara traveled to the "Bravada Yachts" facility for what Browning described as a "design meeting."

32. In that meeting, Defendants were incredibly disorganized, first driving Tara and others across town to look at furniture, and then driving them back to an office to look at design ideas.

33. Also as part of that meeting, Defendants showed Tara the hull of a boat, and represented that the hull—which was in two pieces—was the hull of the "Diversion."

34. On October 25, 2021, Darren asked Browning for an update on construction of the Houseboat, but got no response.

35. In January 2022, when Darren still had not heard from Browning, he started calling Browning, and had multiple telephone conversations with Browning.

36. In those conversations, Darren told Browning that he thought Defendants had used the money Darren and the other apparent owners had paid to "Bravada Yachts," which Darren was told was for construction of the Houseboat, for things other than construction of the Houseboat, and asked Browning for an accounting of how those funds were spent.

37. Browning then likened that request to asking Tesla where a deposit had gone, and through cunning persuasion, again convinced Darren that Defendants had in fact spent the money TAC and other apparent owners deposited on construction of the Houseboat.

38. In February 2022, Johnson then e-mailed Darren and demanded payment of the balance of the purchase price from TAC, which under the Purchase Agreement was due when the hull of the Houseboat was complete.

39. Darren again expressed concern about further payment, asking for proof that the hull was in fact complete.

40. In response, Johnson threatened Darren that TAC would be in breach of the Purchase Agreement if it did not make the second payment.

41. On February 16, 2022, however, Johnson sent Darren photos that she claimed were photos of the hull of the Houseboat.

42. Darren asked if he could see the serial number of the hull, but Johnson merely continued with her threats that TAC would be in breach of the Purchase Agreement if the second payment were not made.

43. Relying on Johnson's representations that the hull of the Houseboat was not only complete, but depicted in those photographs, and not wanting to breach the Purchase Agreement, TAC paid $163,145.60 to "Bravada Yachts" on or about March 4, 2022.

44. Three weeks later, on March 25, 2022, Darren was copied on an e-mail sent by Ken Maxwell ("Maxwell"), another apparent owner of GT2275, to Browning.

45. In that e-mail, Maxwell said that he had signed his contract in August 2019, a full 11 months before GT2275 was ever formed.

46. Maxwell also said that his contract was for the purchase of a "2020 Bravada Yachts GT-2285," not a 2021 model.

47. Maxwell said that on October 16, 2019, Johnson had contacted him and said that construction of his houseboat had started. This was a full year before Taylor's e-mail in October 2020 telling Darren that construction started, and more than 18 months before Browning's e-mail in May 2021 telling Darren that construction had started.

48. Maxwell asked to meet with Browning regarding the issues raised in that e-mail, but as far as TAC is aware, that meeting never occurred.

49. Alarmed by Maxwell's e-mail, Darren began doing research of his own.

50. Through that research, Darren discovered that Defendants were advertising a houseboat for sale called "Nirvana," but through a typo on the website bravadayachts.com Defendants revealed their fraud, inadvertently describing the "Nirvana" as the "Freer."

51. Indeed, TAC is informed and now believes that Defendants use the name of the "Freer," with the subsequent "naming of the boat" meeting, to conceal their fraud and confuse others like TAC by appearing to change boat names through a secretive process.

- 7 -

52. Indeed, on April 26, 2022, other apparent owners of GT2275 visited facilities of "Bravada Yachts."

53. The other apparent owners of GT2275 later told Darren that during that visit, Browning showed them what he represented was the Houseboat and promised Defendants would provide updates every two months on its construction.

54. Defendants have never provided any of the promised updates.

55. On August 17, 2022, TAC learned that Bravada had not used the money paid by TAC to construct the Houseboat, but had instead used it to purchase Destination Yachts Inc., an Indiana corporation ("Destination").

56. TAC immediately retained counsel and, on September 27, 2022, sent a letter to Browning, who was listed on the State of Arizona's website as the manager of GT2275.

57. In that letter, TAC demanded certain records, including a copy of the contract between GT2275 and "Bravada Yachts," as well as records that showed Browning's efforts to press "Bravada Yachts" to complete construction of the Houseboat, the reasons that "Bravada Yachts" provided for delays, and any Browning's efforts took to investigate and substantiate those reasons.

58. Despite the fact that Browning was obligated by statute to provide requested records to TAC within ten days, more than two months have passed and Browning has not provided the requested records to TAC.

59. At all times relevant hereto, Browning has been the manager of GT2275.

60. To date, the relationship between Atlatl Group and Bravada LLC has yet to be explained, and both could be the mysterious "Bravada Yachts" to which TAC has paid a total of $326,291.20.

61. TAC is informed and now believes that the $326,291.20 TAC paid was never used for the construction of the Houseboat, as Browning and Taylor said it would be, but was instead used to pay back other, earlier investor-customers and/or purchase Destination.

62. TAC is informed and now believes that the hull depicted in the photographs that Johnson sent was not the hull for the Houseboat, but a hull that Johnson sent to other, unknown investor-customers for the purpose of soliciting payments that Defendants were not entitled to.

63. TAC is informed and now believes that Browning, Gutierrez, and Sabbatical Yachts use Atlatl Group, Bravada LLC, and a host of other unknown entities as corporate fronts for a houseboat business that in reality operates much more like a Ponzi scheme than a legitimate business, using payments from investor-customers not for the construction of a houseboat for those investor-customers, but to pay back other, earlier investor-customers.

64. Moreover, Browning, Gutierrez, and Sabbatical Yachts are liable for any and all amounts that Atlatl Group and/or Bravada LLC owe to TAC, because Atlatl Group and Bravada LLC have failed to observe corporate formalities and if the Court were to observe their existence as a legal person separate from Browning, Gutierrez, and Sabbatical Yachts, it would sanction a fraud and work an injustice as alleged below.

65. More specifically, TAC is informed and believes that:

      a.      Atlatl Group and Bravada LLC have common ownership and control, have been gravely undercapitalized, as evidenced by the Ponzi-like scheme outlined above, and otherwise failed to observe corporate formalities;

      b.      Browning, Gutierrez, and Sabbatical Yachts have moved funds from Atlatl Group and Bravada LLC to other unknown entities; and

      c.      Browning, Gutierrez, and Sabbatical Yachts have otherwise failed to respect the corporate separateness of Atlatl Group and Bravada LLC, including by using the same employees for both entities and by allowing use of the logo of Atlatl Group and Bravada LLC on contracts, like the Purchase Agreement, to which Atlatl Group and Bravada LLC are not parties.

**FIRST CAUSE OF ACTION:**
**Securities Fraud Against All Defendants**
**(A.R.S. §§ 44-1801 to 44-2126)**

66. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

67. The membership interest in GT2275 that Browning purported to sell to TAC with the Purchase Agreement constitutes a "security" under Section 44-1801 of the Arizona Revised Statutes.

68. Browning, Taylor, and Johnson, acting in the course and scope of respective agencies on behalf of Atlatl Group, Bravada LLC, and other unknown entities, made untrue representations of material fact in connection with the sale of that membership interest.

69. More specifically:

  a. Browning and Taylor repeatedly represented to Darren between June 17, 2020, and June 30, 2020, that amounts TAC paid to "Bravada Yachts" pursuant to the Purchase Agreement would be used for the construction of the Houseboat;

  b. Taylor told Darren that construction of the Houseboat was underway in October 2020, which contravened what Browning told Darren in May 2021 and what Johnson told Maxwell in October 2019; and

  c. Johnson told Darren in February 2022 that the hull of the Houseboat was complete and that pictures she sent Darren depicted that hull.

70. Browning, Taylor, and Johnson made these representations for the purpose of inducing TAC to make payments for the membership interest in GT2275 in furtherance of the Purchase Agreement.

71. Gutierrez and Sabbatical Yachts are controlling persons of Atlatl Group and Bravada LLC, and knew they were controlling persons of Atlatl Group and Bravada LLC, and are therefore jointly and severally liable with the remaining Defendants under Section 44-1999 of the Arizona Revised Statutes.

72. Each of these representations were false, and had TAC known they were false TAC would have never paid any amounts to "Bravada Yachts."

73. Defendants have violated Section 44-1991 of the Arizona Revised Statutes, and TAC is entitled to all remedies provided for by statute, including:

  a. Recovery of the $326,291.20 TAC paid for the membership interest, plus interest thereon;

  b. Taxable court costs; and

c.  Reasonable attorney fees.

## SECOND CAUSE OF ACTION:
**Common Law Fraud Against All Defendants**

74. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

75. Browning, Taylor, and Johnson, acting in the course and scope of respective agencies on behalf of Atlatl Group, Bravada LLC, and other unknown entities, made untrue representations of material fact.

76. More specifically:

   a.  Browning and Taylor repeatedly represented to Darren between June 17, 2020, and June 30, 2020, that amounts TAC paid to "Bravada Yachts" pursuant to the Purchase Agreement would be used for the construction of the Houseboat;

   b.  Taylor told Darren that construction of the Houseboat was underway in October 2020, which contravened what Browning told Darren in May 2021 and what Johnson told Maxwell in October 2019; and

   c.  Johnson told Darren in February 2022 that the hull of the Houseboat was complete and that pictures she sent Darren depicted that hull.

77. Browning, Taylor, and Johnson made these representations for the purpose of inducing TAC to make payments for the membership interest in GT2275 in furtherance of the Purchase Agreement, even though they knew the representations were false.

78. Each of these representations were false, and had TAC known they were false TAC would have never paid any amounts to "Bravada Yachts."

79. TAC had no reason or ability to know that the representations were false, in large part because Defendants intentionally kept TAC from knowing of their falsity.

80. TAC relied upon these representations when it paid $326,219.20 to "Bravada Yachts" in furtherance of the Purchase Agreement.

81. Because these representations concerned the Purchase Agreement, TAC had a right to rely upon the representations.

82. TAC has been damaged by Defendants' fraud in an amount to be proved at trial, which in no event is less than $326,219.20.

83. Gutierrez and Sabbatical Yachts are liable for the obligations of Atlatl Group and Bravada LLC because, at the very least, those entities are their alter egos.

**THIRD CAUSE OF ACTION:**
**Negligent Misrepresentation Against All Defendants**

84. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

85. Browning, Taylor, and Johnson, acting in the course and scope of respective agencies on behalf of Atlatl Group, Bravada LLC, and other unknown entities, made untrue representations of fact in a business transaction.

86. More specifically:

　a. Browning and Taylor repeatedly represented to Darren between June 17, 2020, and June 30, 2020, that amounts TAC paid to "Bravada Yachts" pursuant to the Purchase Agreement would be used for the construction of the Houseboat;

      b.      Taylor told Darren that construction of the Houseboat was underway in October 2020, which contravened what Browning told Darren in May 2021 and what Johnson told Maxwell in October 2019; and

      c.      Johnson told Darren in February 2022 that the hull of the Houseboat was complete and that pictures she sent Darren depicted that hull.

87. Browning, Taylor, and Johnson made these representations in connection with TAC's payments for the membership interest in GT2275 pursuant to the Purchase Agreement.

88. Browning, Taylor, and Johnson intended for TAC to rely on, or at the very least knew that TAC would rely on, their representations.

89. Browning, Taylor, and Johnson failed to exercise reasonable care when they gathered the information from which they made their representations, and in making those representations.

90. TAC justifiably relied on those representations because TAC had no reason or ability to know the representations were false.

91. TAC has been damaged by its reliance on those representations, in an amount to be proved at trial but in no event less than $326,219.20.

92. Gutierrez and Sabbatical Yachts are liable for the obligations of Atlatl Group and Bravada LLC because, at the very least, those entities are their alter egos.

## FOURTH CAUSE OF ACTION:
### Breach of Fiduciary Duty Against Browning

93. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

94. When GT2275 was formed and Browning became the manager of GT2275, he owed fiduciary duties to the members of GT2275, including to TAC.

95. Browning breached those duties, including when he:

　　a.　engaged in transactions with Atlatl Group, Bravada LLC, and/or other entities he owns without disclosing a conflict of interest to the members;

　　b.　failed to exercise due care by ensuring "Bravada Yachts" constructed the Houseboat according to whatever arrangement Browning orchestrated; and

　　c.　failed to ensure that GT2275's funds were used in that construction.

96. TAC has been damaged by Browning's breach of fiduciary duty in an amount to be proved at trial, but in no event less than $326,219.20.

## FIFTH CAUSE OF ACTION:
### Breach of Contract Against Browning

97. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

98. The Purchase Agreement is an enforceable contract between Browning and TAC, specifically because at the time Browning purported to sign the Purchas Agreement on behalf of GT2275, GT2275 did not exist.

99. TAC fully performed its obligations under the Purchase Agreement when it paid $326,219.20.

- 15 -

100. Browning, however, breached the Purchase Agreement, including by failing to provide documents he promised to provide and failing to actually acquire the Houseboat by 2021 and transfer an ownership interest to TAC.

101. TAC has been damaged by Browning's breach in an amount to be proved at trial, but in no event less than $326,219.20.

**SIXTH CAUSE OF ACTION:**
**Unjust Enrichment Against Atlatl Group, Bravada LLC, and Does**

102. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

103. TAC conferred a benefit upon Atlatl Group, Bravada LLC, and/or additional entities doing business as "Bravada Yachts" when it paid them $326,219.20.

104. The benefit that Atlatl Group, Bravada LLC, and those entities received was at the expense of TAC.

105. Under the circumstances, it would be unjust to allow Atlatl Group, Bravada LLC, and those entities to retain the money TAC paid, specifically because TAC was never given the Houseboat it understood it was purchasing with the money it paid.

106. TAC has been damaged by the unjust enrichment of Atlatl Group, Bravada LLC, and/or those additional entities in an amount to be proved at trial but in no event less than $326,219.20.

**SEVENTH CAUSE OF ACTION:**
**Fraudulent Transfer Against Does**

107. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

1      108.   TAC believes certain Does are current or former shareholders of Destination,
2  the identities of whom are unknown to TAC.

3      109.   Before money or other consideration was transferred to those Does, Bravada
4  LLC and Atlatl Group knew of TAC's claim against them for past-due construction of the
5  Houseboat.

6      110.   Nevertheless, Bravada LLC and/or Atlatl Group transferred money or other
7  consideration to the Does that are current or former shareholders of Destination, with intent
8  to hinder TAC from recovering on its claim against Bravada LLC and Atlatl Group.

9      111.   Indeed, the money TAC paid to Bravada LLC and/or Atlatl Group was to be
10 used for construction of the Houseboat, not to purchase Destination.

11     112.   At the very least, TAC is informed and believes that Bravada LLC and Atlatl
12 Group transferred the money or other consideration to the Does that are current or former
13 shareholders of Destination without receiving a reasonably equivalent value in exchange,
14 at the same time Bravada LLC and Atlatl Group either believed or reasonably should have
15 believed that they would incur debts beyond their ability to pay—specifically debts arising
16 from their failure to construct the Houseboat.

17     113.   Indeed, TAC is informed and believes that the transfer of money or other
18 consideration to Destination from Bravada LLC and/or Atlatl Group leaves them insolvent.

19     114.   Accordingly, TAC is entitled to an order voiding the transfer to the Does who
20 are current or former shareholders of Destination, and the other remedies provided by law
21 in Sections 44-1001 through 44-1010 of the Arizona Revised Statutes.

22

# EIGHTH CAUSE OF ACTION:
## Production of Records of GT2275 Against Browning

115. TAC incorporates by reference herein the allegations in paragraphs 1 through 65 above as if they were fully made hereunder.

116. TAC has requested certain records of GT2275 from Browning pursuant to Section 29-3410 of the Arizona Revised Statutes.

117. TAC's request was reasonably related to its rights and duties as a member of GT2275.

118. TAC made the demand for records in a writing received by Browning, as the manager of GT2275, and that writing described with particularity the records sought and TAC's purpose in seeking those records.

119. The records TAC sought are directly connected to TAC's purpose in seeking them.

120. Nevertheless, Browning has refused to provide the requested records to TAC.

121. TAC is therefore entitled to an order compelling Browning to produce all of the records TAC requested, as well as the other remedies provided in Section 29-3410 of the Arizona Revised Statutes, including attorney fees.

# NINTH CAUSE OF ACTION:
## Constructive Trust Against All Defendants

122. TAC incorporates by reference herein the allegations in paragraphs 1 through 121 above as if they were fully made hereunder.

123. As alleged above, Defendants have engaged in wrongful acts, including but not limited to securities fraud and fraud.

124. TAC is informed and believe that Defendants have commingled amounts of money TAC paid to "Bravada Yachts" for the construction of the Houseboat with accounts belonging to Does or other unknown persons.

125. As a result of the wrongful act generally described in paragraph 123 above, all of defendants have been unjustly enriched and have obtained benefits to which they are not and were not entitled, and which should have been received for the benefit of TAC.

126. A substantial and manifest injustice will result if Defendants are able to keep assets and monies that rightfully belong to TAC.

127. Accordingly, the Court should impose a constructive trust on all assets and monies TAC paid to "Bravada Yachts," which should be held for TAC's benefit.

## **PRAYER FOR RELIEF**

WHEREFORE, TAC prays the Court enter judgment in its favor and award to TAC the following relief:

A. Judgment for damages in an amount to be proved at trial, but in no event less than $326,219.20, plus pre- and post-judgment interest as allowed by law;

B. Punitive and/or exemplary damages;

C. A rescission of the Purchase Agreement, including because it was procured by fraud;

D. An order voiding the transfer of money or other consideration from Bravada LLC and/or Atlatl Group to Does who are current or former shareholders of Destination;

E. An order compelling Browning to produce the requested records of GT2275;

F. An order imposing a constructive trust on money TAC paid to Defendants;

  G. An award of TAC's costs and attorney fees as is allowed by contract, statute, or other applicable law, including without limitation:

   i. Sections 44-2001 and 29-3410 of the Arizona Revised Statutes;

   ii. the Purchase Agreement;

   iii. the exception to the American Rule for breach of fiduciary duty; and

   iv. the Third-Party Tort Rule.

## JURY DEMAND

In accord with Rule 38 of the Federal Rules of Civil Procedure, TAC respectfully demands a trial by jury of all issues triable thereto.

DATED this 21st day of December, 2022.

            **BENDER DAY CULLIMORE**

            */s/ Nicholas A. Bender*
            Nicholas A. Bender
            *Attorneys for Plaintiff*